# Dutton's Estate.

*Practice, orphans' court—Issue to try question of fact—Promissory note—Interlineation.*

Where an auditor rejects a promissory note on the ground of insufficient evidence to explain an interlineation obvious on the face of the note, the court may at its own instance on exceptions to the auditor's findings of fact, direct an issue to a jury to try the question of the validity of the note; and this is the case although the question of the legal obligation of the note involves three others; (1) whether the interlineation was written before signature; (2) whether there was a relation of trust and confidence between testatrix and the payee of the note, and (3) whether the relation was of that character which imposed on the creditor the burden of proving a consideration.

On an issue to try the validity of a promissory note, having on its face an obvious interlineation, it appeared that the note was on a printed form payable one day after date, but before the last line preceding the signature, were interlined in a full written line these words, " This to be held until after my death." The signature was in the handwriting of testatrix, but the other written parts were in the hand of the payee, her stepson. The evidence was not entirely clear whether the interlineation from its appearance was made at the time with the same pen and ink as the other written parts of the note. The evidence showed that the testatrix was an intelligent woman, could read and write, transacted considerable business in the investment of her money, had the note in her possession for a year before she delivered it to the payee, that the latter had been especially attentive and kind to her, that she was actually indebted to him in some amount for goods, though not nearly to the amount of the note, and that she frequently declared her intention to compensate him for all he had done for her. *Held*, that the evidence was sufficient to sustain a verdict in favor of the validity of the note.

Argued Feb. 10, 1903. Appeal, No. 334, Jan. T., 1902, by Isaac Thomas surviving executor of Lydia F. Dutton, deceased, from decree of O. C. Del. Co., overruling exceptions to auditor's report in estate of Lydia F. Dutton. deceased. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to report of J. T. Reynolds, Esq., auditor.

The case involved the validity of a promissory note partly printed and partly in writing in the following form:

"$3600$^{00}$/$_{100}$                    CHESTER, Pa., April 3, 1893.

"One day          after date, I promise to pay to the order

of                        George G. Dutton

at the Delaware County National Bank

Thirty-six Hundred                          $^{00}$/$_{100}$ dollars

This to be held until after my death.

without defalcation, value received.

(Signed)        "LYDIA F. DUTTON."

The facts of the case are set forth at length in the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to auditor's report.

*A. Lewis Smith,* for appellant.—The order of the court directing an issue was erroneous: People's Savings Bank v. Mosier, 199 Pa. 375; Knight's Appeal, 19 Pa. 493; Bradford's Appeal, 29 Pa. 513; Foster's Appeal, 87 Pa. 67; Est. of Ambrose White, 11 Phila. 100.

Neither the orphans' court nor the common pleas can direct an issue for the trial of a question of law, or for the trial of a mixed question of law and fact, but only for the trial of questions of fact alone, and these questions must be precisely stated: Robinson v. Zollinger, 9 Watts, 169; Robinson's Appeal, 36 Pa. 81; Russel v. Reed, 27 Pa. 166; Christophers v. Selden, 28 Pa. 165; Shertzer's Exrs. v. Herr, 19 Pa. 34; Cobb v. Burns, 61 Pa. 278; Landis v. Lyon, 71 Pa. 473; Curren's Est., 11 Phila. 59.

The evidence was insufficient to sustain the note: Kern's Est., 171 Pa. 55; Darlington's Est., 147 Pa. 624; Scattergood v. Kirk, 192 Pa. 263.

The orphans' court may " disregard the verdict " and decide according to its own convictions: Commonwealth v. The Judges, 4 Pa. 301; Baker v. Williamson, 4 Pa. 456; Hallowell's App., 20 Pa. 215; Green v. Mills, 103 Pa. 22; Cake v. Cake, 106 Pa. 472; Finney's App., 37 Pa. 323; Thompson's App., 103 Pa. 603; Kates's Est., 148 Pa. 471.

*David F. Rose* and *W. B. Broomall,* for appellee.—If the note was patently altered, the law raised a presumption of fact

that it was altered after execution. This is but a slight presumption and may be removed by slight circumstances, such as the fact that the alleged alteration is against interest, or the intrinsic evidence of the instrument itself: Heffelfinger v. Shutz, 16 S. & R. 44.

The orphans' court may send issues to the common pleas whenever it is deemed expedient. Act of March 29, 1832, sec. 55, P. L. 190.

This case belongs to the class of cases where the question of alteration is doubtful and is for the jury: Clark v. Eckstein, 22 Pa. 507; Winters v. Mowrer, 1 Pa. Superior Ct. 47; Gettysburg Nat. Bank v. Gage, 4 Pa. Superior Ct. 505.

OPINION BY MR. JUSTICE DEAN, March 23, 1903:

At the audit for distribution of testatrix's estate, George G. Dutton, her stepson, presented a promissory note of hers, in sum of $3,600, and claimed that it be distributed to. The note was dated April 3, 1893, on a printed form, payable one day after date, but just before the last line preceding the signature were interlined in a full written line these words, "This to be held until after my death." All the written parts of the note except the signature, it was admitted, were in the handwriting of George G. Dutton, the payee. The signature of Lydia F. Dutton was undisputedly genuine. The evidence was not entirely clear, whether the interlineation, from its appearance, was made at the time with the same pen and ink as the other written parts of the note. The auditor did not, on the evidence, determine this fact; but as the fact of interlineation was obvious, he held, under the case of Marshall v. Gougler, 10 S. & R. 164, Hill v. Cooley, 46 Pa. 259, and a long line of cases down to Bank of Baltimore v. Williams, 174 Pa. 66, that it was incumbent on the holder of the interlined note to prove that the interlineation was honestly made. He was of the opinion, that the holder had failed in such proof and therefore rejected the note as evidence of the claim. No other sufficient evidence in support of the claim was adduced. On the auditor's report coming before the orphans' court, it was met by the exception that the auditor erred in not allowing the claim of George G. Dutton on the evidence offered to sustain it. After full argument, the learned judge of the orphans' court said:

" There may be some doubt as to the alleged interlineation. We do not feel called upon to decide the question of fact, depending only on the weight of the evidence, and have, therefore, concluded to grant an issue to try that question." Accordingly he directed an issue in this form :

" And now, June 19, 1899, an issuable matter of fact having arisen in the above stated case upon the validity of a promissory note of the decedent dated April 3, 1893, for thirty-six hundred dollars, it is deemed expedient by the court to refer an issue to the court of common pleas of Delaware county in relation thereto in the following form :

" The said George G. Dutton shall be plaintiff and the said executors shall be defendants and the issue to be tried shall be the same in all respects as if the plaintiff had filed a statement of claim based on the said promissory note, incorporating a copy thereof, and had averred that the amount justly due owing and payable is the sum of thirty-six hundred dollars with interest thereon from the sixteenth day of February, A. D. 1896, and the defendant had filed a plea of non assumpsit."

At the trial in the common pleas there was a verdict for the plaintiff, George G. Dutton, in the sum of $4,323.60, being the face of the note with interest, which with the entire proceedings was by the prothonotary certified back to the orphans' court. There being no separate orphans' court for Delaware county, necessarily the judges of the orphans' court and of the common pleas were the same, at that time the late Hon. Thomas J. Clayton, who heard the exceptions to the auditor's report, directed the issue to the common pleas and in that court tried it. A motion for a new trial was made, which after hearing, he overruled. Before anything further was done he died. Judge Johnson, his successor, having been of counsel, called in Hon. William Butler of Chester county to dispose of the exceptions, after the record of the common pleas came back to the orphans' court. He decreed that the first and second exceptions to the auditor's report, which constituted the substance of the issue in the common pleas, be sustained, and that the distribution be referred back to the auditor, he " to be controlled by the result in the common pleas, so far as the law directs he should be, and so far as there may be no legal reasons to the contrary." Notwithstanding the verdict in the common pleas

and the decree of the orphans' court sustaining the first and second exceptions to his first report, the auditor refused to change his distribution, on the ground that in his opinion, "the issue was irregular, if not wholly unwarranted." On the coming in of this report, Judge Butler again presiding, sent the report back to the auditor with a peremptory direction to allow the claim of George G. Dutton in accordance with the verdict certified from the common pleas, saying: "Under the circumstances, we feel that we should simply record the judgment which Judge Clayton clearly would have entered had not the accident of death removed him when it did." In accordance with this order the auditor made distribution.

The legatees, on confirmation of the report, prosecute this appeal with fourteen assignments of error. It would not aid us in the consideration of the alleged errors to discuss separately each one of them. Directly or indirectly, they in substance allege three errors and but three as follows:

1. The court erred in directing of its own motion an issue to the common pleas.

2. The court erred in directing an issue for the determination of a mixed question of law and fact.

3. The court erred in determining as a fact on the evidence that the note was entitled to distribution.

As to the first assignment we remark, there was but one question in dispute and that was as the court below termed it, "the validity of the note," or rather should it be enforced as a legal obligation of the testatrix? It was her note; it had not been paid; had it become of no legal effect because of an alteration after signature, or had it been obtained from her by methods closely allied to fraud? The issue directed was one in assumpsit, which would involve these questions of pure fact and on that issue it was well and carefully tried. The auditor's report on the question of fact was against the creditor. The orphans' court might on a reading of the testimony have overruled the auditor without further proceedings, or it might have affirmed his finding; the judge of the court probably being in doubt, declined to do either, but of his own motion sent the case to a jury. It is argued that this was too late, as the creditor had submitted his case to the auditor and taken his chances of a favorable decision. This is correct as applicable

to a disappointed suitor who has been heard before one tribunal and lost and then demands, as a right, a hearing before another, and all the authorities cited by the auditor and the counsel for appellant so hold. See People's Sav. Bank v. Mosier, so late as 199 Pa. 375, where many of the cases are noted. But none of the cases rule the one before us. If the claimant here had, after the finding against him by the auditor, demanded that the question of fact be sent to a jury, the court might well have ruled on the cases cited, that such was not his right. But here, exceptions to the auditor's finding of fact were pressed upon the consideration of the court; the written testimony, which was all the court had before it, may not have seemed to the judge as convincing as to the auditor, for the latter had before him the witnesses and, therefore, to overrule him, even though the judge did not concur, might be a mistake; the case to the creditor was an important one; with him it was all or nothing. Therefore, to enlighten his conscience the judge of the orphans' court sitting as chancellor, thought best to send the issue of fact to a jury; not as the right or at the request of the creditor but in response to his own sense of what was judicially the safer course. He hesitates as one judge to overrule another judge, the auditor, on contradictory and doubtful testimony, where the latter has had the advantage of hearing and seeing the witnesses. So he sends the case before twelve jurors who will have every opportunity the auditor had and where he can preside, see and hear for himself. This is not done as a benefit to the disappointed creditor, but as a means of obtaining further light, as a foundation for an intelligent and conscientious decree.

There have been cases where we have held that the judge ought not to overrule the findings of fact by an auditor or a master without satisfactory reasons stated of record, but no case is cited, nor do we believe there is one, where this court has held that it is not entirely proper for a judge to send of his own motion, to satisfy his conscience, a disputed question of fact before a jury, notwithstanding a finding by an auditor. True the verdict of the jury is not conclusive upon the judge; he may in a final decree disregard it; but that is not material to the question and does not touch his right to direct an issue. Therefore, appellant's first assignment of error is overruled.

The second assignment complains that the issue was directed to try a mixed question of law and fact. While it is settled that the court cannot direct a question of law to be passed upon by a jury, yet the questions of law and fact may be so blended as to render it impossible to separate them in framing the issue. Here for example was the question whether this note was a legal obligation and this involved three others: First, was the sixth line of the note written before signature? Second, was there a relation of trust and confidence between testatrix and the creditor? Third, was the relation of that character which imposed on the creditor the burden of proving a consideration? There might be relations of trust and confidence having no bearing on the business relations of the debtor and creditor; their character could only be ascertained as developed by the evidence, and the law applicable to the relation could only be announced as the evidence was offered or at the close of the evidence in the charge to the jury.

It would be impossible for the court to foresee and provide for each phase of the case in framing the issue. By no fair construction can it be interpreted as directed to try a question of law although incidentally in trying the fact questions of law arose calling for the decision of the judge. For example, at the trial the cashier of the bank being called as a witness for plaintiff, stated that the note, except the interlineation, was in the ordinary form of a promissory note recognized by the bank in its business, and that it was not unusual to add to the printed blank written stipulations not in the note proper, or in the blank spaces corresponding to the printed words; this was objected to by defendant but allowed by the court and exception taken. Incidentally, the court thus decided a question on the law of evidence which could not have been anticipated in framing the issue. And many other questions of law arose during the trial which called for immediate decision by the court, but they were all incidental to the ascertainment of the main questions of fact.

And so, whether there was sufficient evidence to show such relation of confidence and trust as imposed upon the creditor the burden of showing that there was a consideration for the note was also incidental to the main question. If the interlineation was made after the signature, the note was void; if

before, and it was obtained by the payee by unfair means from one who trusted and confided in him without knowledge of its consequences to her estate, the note was void as to him who thus obtained it. There was evidence to go to the jury on this question and the court very clearly and fairly submitted it to them, with the law applicable thereto.

This brings us to what is in substance the third assignment of error, was there sufficient evidence to sustain the claim in view of the relations of the parties, even if the interlineation was there before the signature? In view of the verdict, we must assume that it was there before. The evidence showed that it was in testatrix's possession a year before it was delivered to the payee; that he had been specially attentive and kind to her; that she was actually indebted to him in some amount for goods, though not nearly to the amount of the note; that she frequently declared her intention to compensate him for all he had done for her; the court instructed the jury that if they found from the evidence, that there was such a confidential relation as gave to the creditor a power to unduly influence her, then the burden was on him to show that she perfectly understood the effect of the note, knew the amount, and how much it would deplete her estate after her death. This was fully as favorable to defendants as they had a right to ask. Testatrix was an intelligent woman, could read and write, transacted considerable business in the investment of her money; had this note in her pocketbook for a year before she delivered it to the payee. Therefore, there was competent evidence which warranted the jury in finding, as they did, for plaintiff. All the assignments of error it follows must be overruled.

The argument that Judge Butler only overruled the report of the auditor because he conjectured Judge Clayton if he had lived would have done the same, rests on no sound foundation. We may be very sure that if Judge Butler had been of the opinion, the claim was not sustained by the evidence of record, he would not have hesitated to disregard the verdict; to say otherwise would be to conclude that he made a wrong decree because Judge Clayton would, if he had lived, have committed the same wrong. We do not think so. As is obvious, from what he says, the facts that Judge Clayton tried the issue, heard all the evidence, then fully and impartially sub-

mitted it to the jury, then refused a motion for a new trial, were persuasive evidence with Judge Butler in making his decree; nevertheless that decree was based on the evidence before him and ought to stand. Therefore, it is affirmed and the appeal is dismissed.